UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DANTE NEDERVELD,

                    Plaintiff,                          Case No. 1:25-cv-1548

v.                                                      Honorable Maarten Vermaat

UNKNOWN SICES et al.,

                    Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate

order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all

matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial

review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131,

1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a

putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless

notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The events about which he complains occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following DRF staff: Doctor **Unknown Sices**, Physician Assistant **Unknown Adams**, Physician Assistant **Unknown Merchant**, and Nurse **Unknown Scholfeild**. (Compl., ECF No. 1, PageID.1–2.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

Plaintiff alleges that in February 2025, he arrived at the Carson City Correctional facility suffering from Rheumatoid Arthritis. (*Id.*, PageID.3, 4.) Plaintiff was subsequently prescribed Renflexis infusions to be administered monthly. (*Id.*, PageID.4.) Plaintiff received approximately five infusions, and experienced adverse side effects from the beginning. (*Id.*)

Plaintiff spoke with Defendant Adams and described the side effects he was experiencing. (*Id.*) Plaintiff told Defendant Adams that he "needed to be seen as soon as possible," and Defendant Adams told Plaintiff that he would be seen by Defendant Merchant in one month via "telemed."[2] (*Id.*)

Plaintiff was subsequently seen by Defendant Merchant via "telemed," and Plaintiff told Defendant Merchant of the symptoms[3] he was experiencing. (*Id.*) Defendant Merchant recommended several different strategies to aid in Plaintiff's arthritis treatment, but "none of these recommendations were followed or approved by Lansing." (*Id.*) Defendant Merchant became frustrated at the lack of support she was given by MDOC Bureau of Health Care Services. (*Id.*) Because of the side effects of Plaintiff's Renflexis infusions, Defendant Merchant discontinued Plaintiff's Renflexis treatment and started Plaintiff on Methotrexate. (*Id.*) That treatment was not effective, and Plaintiff's symptoms continued. (*Id.*)

Plaintiff was subsequently taken off Methotrexate and was "forced to undergo" injections of Yusimry. (*Id.*, PageID.5.) At a later visit, Defendant Merchant "informed [Plaintiff] that Yusimry is basically the same drug as Humara, which [Plaintiff] previously suffered a life-

---

[2] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

[3] It is unclear if this refers to symptoms related to Plaintiff's Rheumatoid Arthritis or symptoms related to the side effects from the treatment Plaintiff received.

threatening side effect or reaction to." (*Id*.) Defendant Merchant continued Plaintiff's treatment with Yusimry despite her awareness of that previous adverse reaction. (*Id*.)

Plaintiff was then seen by Defendant Sices, and Plaintiff told Defendant Sices that he was "suffering serious side effects either from the prescription medication or something else." (*Id*.) Defendant Sices told Plaintiff that these symptoms "could possibly be [the] early stages of heart failure." (*Id*.) Plaintiff claims that Defendant Sices did nothing to either refute or confirm this possibility. (*Id*.)

Based on the foregoing allegations, Plaintiff raises Eighth Amendment denial of medical care claims. Plaintiff seeks monetary damages and injunctive relief. (*Id*., PageID.6.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

5

relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In this action, Plaintiff brings Eighth Amendment claims against Defendants. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes, U.S. Const. amend. VIII, and the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id*. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id*. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id*. The objective component of the adequate medical care test is satisfied "[w]here the

seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id*. at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id*.; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty*., 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

8

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). The Court addresses Plaintiff's allegations against each named Defendant below.

### A.    Defendant Adams

Plaintiff alleges that he told Defendant Adams about the "side effects" he was experiencing from the prescribed Renflexis treatment and requested that he be seen as soon as possible, but Defendant Adams informed Plaintiff that he would be seen by Defendant Merchant a month later. (Compl., ECF No. 1, PageID.4.) Plaintiff presents no further allegations against Defendant Adams.

As an initial matter, Plaintiff does not allege what specific side effects he was experiencing from the prescribed Renflexis treatment, let alone what side effects he described to Defendant Adams. (*See id.*) Under these circumstances, it is not clear that Plaintiff's allegations regarding unspecified "side effects" would satisfy the objective component of the relevant two-prong test. Moreover, even assuming, without deciding, that Plaintiff had alleged sufficient facts to satisfy the objective component, as explained below, Plaintiff fails to allege sufficient facts to satisfy the subjective component.

As to the subjective component, Plaintiff alleges that at an appointment with Defendant Adams upon Plaintiff's arrival at DRF, he told Defendant Adams that he was experiencing unspecified side effects from the prescribed Renflexis treatment and "needed to be seen as soon as possible"; however, Plaintiff fails to allege any facts to explain why he "needed to be seen as soon as possible." (*Id.*) Indeed, as discussed above, Plaintiff does not allege any facts about what

9

specific side effects he was experiencing. Plaintiff then alleges that after he informed Defendant Adams regarding his needed for subsequent treatment, Defendant Adams indicated that Plaintiff would have an appointment with Defendant Merchant in a month. (*Id.*) It is clear that Plaintiff disagreed with Defendant Adams's medical determination that Plaintiff's condition was such that his appointment with Defendant Merchant could be scheduled for one month later; but, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605.

Furthermore, Plaintiff's allegations do not show that the one month "delay" between the two appointments resulted in treatment "so woefully inadequate as to amount to no treatment at all," *Mitchell*, 553 F. App'x at 605, or that the timing of his treatment resulted in care that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller*, 408 F.3d at 819. Indeed, Plaintiff does not allege that he experienced any detrimental effects during the one-month period between his appointment with Defendant Adams and his subsequent appointment with Defendant Merchant. *See Napier*, 238 F.3d at 742. And, Plaintiff's allegations do not show that Defendant Adams was aware of an obvious and serious need for medical treatment and delayed medical treatment of that condition for non-medical reasons. *See Blackmore*, 390 F.3d at 899.

Accordingly, for these reasons, Plaintiff's Eighth Amendment claims against Defendant Adams will be dismissed for failure to state a claim.

**B.    Defendant Merchant**

Next, Plaintiff alleges that he was seen by Defendant Merchant on multiple occasions. (Compl., ECF No. 1, PageID.4–5.) During these visits, Defendant Merchant "recommended several different things" to help Plaintiff's treatment and "took it upon herself" to switch Plaintiff

10

from one medication to another after learning of the side effects caused by the first medication. (*Id*., PageID.4.) Defendant Merchant also "became frustrated at the lack of support she was given by" the MDOC Bureau of Health Care Services. (*Id*.)

Additionally, Plaintiff alleges that Defendant Merchant was aware that Plaintiff had previously had a life-threatening reaction to Humara, which was "basically the same drug" as Yusimry, but that Defendant Merchant did not discontinue Plaintiff's Yusimry treatment. (*Id*., PageID.5.)

Plaintiff's allegations do not show that Defendant Merchant was deliberately indifferent to Plaintiff's health. *See Farmer*, 511 U.S. at 834. On the contrary, Plaintiff's allegations suggest that Defendant Merchant was attentive to Plaintiff's medical needs and even became frustrated when she did not receive the desired support for Plaintiff's care from the MDOC Bureau of Health Care Services.

Moreover, to the extent that Plaintiff disagreed with Defendant Merchant's decision to continue Plaintiff's use of Yusimry, an inmate's "disagreement with the testing and treatment he has received," or his "desire for additional or different treatment," does not amount to an Eighth Amendment violation. *Rhineheart*, 894 F.3d at 740. Additionally, "the prescribing of drugs by a physician[, or other medical provider,] which causes side effects does not constitute deliberate indifference." *See Mason v. Eddy*, No. 1:18-cv-2968, 2019 WL 3766804, at *11 (N.D. Ohio) (citations omitted); *Christensen v. United States*, No. 5:11-321-KKC, 2013 WL 4521040, at *4 (E.D. Ky. Aug. 26, 2013) (discussing that the doctor's "decision to continue [the inmate's] prescription for [the medication that caused side effects] was evidently based upon her medical judgment that its benefits to his long-term cardiac health outweighed its detrimental side effects"). Furthermore, Plaintiff's allegations do not show that the care he received was "so grossly

11

incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller*, 408 F.2d at 819.

Accordingly, for all of the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendant Merchant will be dismissed for failure to state a claim.

### C.    Defendant Sices

Plaintiff alleges that after his visits with Defendant Merchant, he was later seen by Defendant Sices. (Compl., ECF No. 1, PageID.5.) At that time, Plaintiff told Defendant Sices that he was "suffering serious side effects either from the prescribed medication or something else." (*Id*.) Defendant Sices told Plaintiff that Plaintiff's symptoms "could possibly be early stages of heart failure," but Defendant Sices "did not do anything to either refute or corroborate his assumption." (*Id*.) Plaintiff asserts that it constituted deliberate indifference for a doctor "to know about a condition and not do anything to treat that condition[.]" (*Id*.) Plaintiff does not provide any further facts regarding Defendant Sices, and Plaintiff's allegations against Defendants Sices are the last factual allegations set forth in the complaint.

As explained below, Plaintiff's allegations are insufficient to show that Defendant Sices's decision not to pursue further testing or treatment after being informed of Plaintiff's unspecified symptoms constituted deliberate indifference. As an initial matter, although Plaintiff alleges in a conclusory manner that it constituted deliberate indifference for a doctor "to know about a condition and not do anything to treat that condition," Plaintiff's own allegations show that Defendant Sices did not specifically diagnose Plaintiff as being in the early stages of heart failure. (*Id.*) Instead, Plaintiff's allegations show only that Defendant Sices stated that Plaintiff's unspecified symptoms "*could possibly* be early stages of heart failure." (*Id.* (emphasis added).)

And, regardless, Plaintiff does not specify when this alleged interaction with Defendant Sices occurred, he does not identify any of the symptoms he was experiencing at that time, and he

does not explain whether these unspecified symptoms continued, ended, or worsened after the appointment with Defendant Sices. A plaintiff must plead sufficient facts to support his claims, and without any of this information, Plaintiff fails to show that Defendant Sices's medical decision not to pursue further testing or treatment constituted deliberate indifference to Plaintiff's health. And, Plaintiff's "disagreement with the testing and treatment he has received," or his "desire for additional or different treatment," does not amount to an Eighth Amendment violation. *Rhineheart*, 894 F.3d at 740. Moreover, although heart failure could certainly be a serious condition, Plaintiff's conclusory allegations, which do not specify the symptoms he was experiencing and do not explain whether these unspecified symptoms continued, ended, or worsened, are insufficient to show that Defendant Sices both knew of and disregarded a serious risk of harm to Plaintiff at Plaintiff's appointment with Defendant Sices. *See Farmer*, 511 U.S. at 837.

Accordingly, for the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendant Sices will be dismissed for failure to state a claim.

### D.    Defendant Scholfeild

Plaintiff asserts in a conclusory manner that Defendant Scholfeild "was aware of [Plaintiff's] symptoms" and "the fact that [Plaintiff] was in constant pain," but "failed to provide any treatment" "on several [unspecified] occasions." (*Id*., PageID.3.) However, Plaintiff does not specify when he met with Defendant Scholfeild or what happened at those visits, and beyond this conclusory allegation, Plaintiff does not present any further factual allegations about Defendant Scholfeild. (*See id*., PageID.4–5.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not

13

allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). And, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *See Iqbal*, 556 U.S. at 676. Here, Plaintiff's conclusory allegation that Defendant Scholfeild "failed to provide any treatment" on "several [unspecified] occasions," which is unsupported by any *facts*, is insufficient to show that Defendant Scholfeild was personally involved on any specific occasion in the denial of medical care to Plaintiff. (*See generally* Compl., ECF No. 1.) And, Plaintiff's threadbare and conclusory allegations against Defendant Scholfeild are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678.

Accordingly, Plaintiff fails to state any claim against Defendant Scholfeild upon which relief may be granted. The Court will dismiss all intended claims against Defendant Scholfeild.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.


Dated:    July 16, 2026                                    /s/ *Maarten Vermaat*
                                                           Maarten Vermaat
                                                           United States Magistrate Judge